# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER T. BROWN | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PJM-10-1165 |
| EASTERN CORRECTIONAL INSTITUTION | * | |
| KATHLEEN GREEN, | | |
| RONALD DRYDEN, | * | |
| MICHAEL KING, | | |
| KEVIN SUKOP, and | * | |
| BRUCE BOZMAN | | |
| | * | |
| Defendants | | |

***

## MEMORANDUM

Pending is Defendants' Motion to Dismiss or for Summary Judgment. ECF No. 15. Although he was advised of his right to oppose Defendants' motion and of the consequences of failing to do so, Plaintiff has not filed a Response.[1] *See* ECF No. 16. Upon review of the papers filed, the Court deems a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2010).

## Background

On February 2, 2010, Plaintiff claims he and eleven other inmates at Eastern Correctional Institution (ECI) were verbally told by correctional officers they were being placed on lockdown status. ECF No. 1 at p. 4. Prior to being placed on lockdown, Plaintiff states he was not served with notice of a rule infraction or notice that he was being assigned to administrative segregation status as required by applicable Division of Correction Directives (DCDs).

---

[1] On December 6, 2010, Plaintiff filed an Opposition to Defendants' Motion for Extension of Time, seeking inter alia denial of Defendants' requested extension and entry of default judgment against them. ECF No. 19.

Plaintiff claims he asked Chief of Security Michael King why he had been placed on lockdown status and King replied, "everyone on lockdown is in a gang." Plaintiff denied being in a gang and asked King if he had a file on him. Plaintiff alleges that King replied "if I don't, I soon will." Plaintiff asked King if he would be fabricating the file and King simply smiled and walked away. Plaintiff further claims that on March 3, 2010, Lt. Kevin Soukup subjected Plaintiff to a shake-down and stated he was doing it because Plaintiff is white. ECF No. 1 at p. 4.

During the lockdown, Plaintiff claims he was denied hot meals from February 3, 2010 through February 8, 2010, receiving only bag lunches. In addition he was denied use of the phone from February 3, 2010 through February 16, 2010. Plaintiff states he was told by Officer Adams that Soukup issued an order that all inmates on lockdown status would be denied phone calls and recreation. ECF No. 1 at p. 5.

Plaintiff alleges that he was placed in harm's way when he was put on lockdown status since he is not a gang member. He explains he was placed on lockdown with known gang members which causes other gangs to believe Plaintiff is a member of the gang. Plaintiff states this action makes him a target of other rival gangs. ECF No. 1 at p. 5.

Plaintiff contends the actions of the staff were undertaken simply because he is white. He claims the prison administration assumes a white inmate who has no problems with other inmates must be a part of an organization. ECF No. 1 at p. 5. Plaintiff reaches this conclusion because multiple reasons, which he claims are documented elsewhere, were given to him for his placement on lockdown.

Defendants state that the lockdown on Plaintiff's housing unit was done in the wake of a violent fight. ECF No. 16 at Ex. 1. Information had been received indicating that the altercation

was committed by a prison gang known as Dead Men Incorporated (DMI) and that there was a planned counter-attack on members of DMI in retaliation for the first attack. Thus, all known and suspected DMI members were placed on lockdown in order to protect them from the planned retribution from a rival gang and to permit intelligence gathering regarding the validity of the information received. *Id*.

Defendants state that inmates who were on lockdown status were fed in their cells and received showers. The meals provided met basic nutritional needs. ECF No. 16 at Ex. 2 and 3. On February 16, 2010, when the investigation validated the information received, the inmates were placed on administrative segregation status. Plaintiff received one hour of daily recreation, daily showers and phone privileges while on administrative segregation status. *Id*. at Ex. 2. Plaintiff denied being a member of DMI throughout the investigation and on February 19, 2010, a case management team recommended that Plaintiff be returned to general population. *Id*. at Ex. 5, p. 3.

Plaintiff's removal from administrative segregation was approved by Assistant Warden Hanke and he was moved to general population on March 2, 2010. Plaintiff received an infraction the following day, was assigned to administrative segregation pending disciplinary proceedings, and, upon a guilty finding, was assigned to disciplinary segregation on March 25, 2010. ECF No. 16 at Ex. 2 and 7. This pattern was repeated several times thereafter, with Plaintiff receiving disciplinary infractions prompting his removal from general population. *Id*.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

3

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

In the prison context there are two different types of constitutionally protected liberty interests which may be created by government action. The first is created when there is a state created entitlement to an early release from incarceration. *See Board of Pardons v. Allen*, 482 U. S. 369, 381 (1987) (state created liberty interest in parole); *Wolff v. McDonnell*, 418 U. S. 539, 557 (1974) (state created liberty interest in good conduct credits). The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in

4

relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995). Thus, before deciding whether Plaintiff is entitled to due process, it must be determined if the conditions under which he was confined constituted an atypical and significant hardship.

The Supreme Court found a liberty interest implicated where inmates in Ohio were assigned to the Ohio State Penitentiary (OSP), a super-maximum security prison where almost all human contact was prohibited and communication between cells was forbidden. Exercise was limited to one hour a day in a small indoor room, and the inmates were exposed to light 24 hours per day. *See Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). The court noted that although the conditions alone were not enough to create a liberty interest, when coupled with the indefinite duration of assignment[2] to the prison and the disqualification of an otherwise eligible inmate for parole consideration, the conditions "impose an atypical and significant hardship within the correctional context." *Id*. at 224.

Applying the Supreme Court's rationale, this court found that a transfer to MCAC implicated procedural due process protections:

> In light of the prohibition of "almost all human contact," coupled with severe restrictions on movement or any type of activity, both of which may last for the duration of some inmates' underlying sentences, and may be less likely to be relieved by parole than the less arduous conditions at other facilities, the conditions at MCAC create such a hardship when judged against "any plausible baseline." Inmates thus have a protected liberty interest in avoiding transfer to MCAC.

*Farmer v. Kavanaugh*, 494 F. Supp. 2d 345, 358 (D. Md. 2007).

The *Wilkinson* Court found that the process provided to Ohio inmates assigned to OSP complied with due process protections, noting that the Ohio inmates receive written notice 48

---

[2] The district court noted that the length of an inmate's stay at the prison was a function of the procedures for review in place. *See Austin v. Wilkinson*, 189 F.Supp.2d 719, 740 (N.D.Ohio2002). Inmates assigned to the prison could only progress through the various levels after reclassification reviews which were conducted annually and "even inmates with exemplary behavior rarely progress through OSP in less than two years." *Id*.

hours in advance of a hearing "summarizing the conduct or offense triggering the review" and is provided a prepared form explaining why the review was initiated. *Wilkinson*, 545 U.S. at 216. The Ohio inmate is permitted to attend the hearing where they are allowed to offer "pertinent information, explanation and/or objections to OSP placement and may submit a written statement," but he may not call witnesses. *Id*. In addition to the notice and the hearing, the Ohio system included a review of the committee's decision by the warden, who must provide reasons for an approval of an assignment, as well as an additional review by a bureau which is vested with final decisionmaking authority over all inmate assignments in Ohio. *Id*. After these reviews are completed, the inmate is allowed 15 days to file objections with the Bureau and it is only after this 15 day period expires that the inmate is transferred to the facility. *Id*. at 217. Inmates who are transferred are given another review within 30 days of their arrival and, thereafter, are reviewed yearly. *Id*.

> The three factors to be balanced to determine how much process is due are:
>
>> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Wilkinson*, 545 U.S. at 224-225, *citing Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

In the instant case there was information indicating that members of DMI were targeted for a violent attack. Plaintiff was a suspected member of DMI. A lockdown was instituted in order to protect the lives of Plaintiff and others who may have been targeted by a rival gang. To the extent that Plaintiff was incorrectly presumed to be a member of DMI, the mistake in his affiliation is far outweighed by the possible danger to his personal safety. Prison officials are assigned the difficult task of discerning the secret membership of security threat groups whose

members are unlikely to openly admit their allegiance. Gang activity is a serious problem in the prison setting. In the instant case, investigators were able to discern who should be included in the lockdown in a little over two weeks. The interest in stopping prison violence outweighs the encroachment on Plaintiff's privileges, particularly in light of the undisputed evidence that Plaintiff received out-of-cell activity and showers almost every day he was on lock down status. ECF No. 16 at Ex. 4. As for any claims that Plaintiff was subjected to cruel and unusual punishment or was the victim of race discrimination, the claims are clearly frivolous and are dismissed.

The undisputed record evidence establishes Defendants are entitled to summary judgment. A separate Order granting their motion follows.

February 22, 2011

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE